In re Lester J. HARRIS, Debtor.

Lester J. HARRIS, Appellant,

v.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Appellee.

Nos. 80–10–BKC–TCB–A, 80–1128–Civ–SMA.

United States District Court, S. D. Florida, Miami Division.

Sept. 19, 1980.

Warren D. Hamann, Miami, Fla., for appellant.

Blackwell, Walker, Gray, Powers, Flick & Hoehl, Stephen Judson, Miami, Fla., for appellee.

## OPINION AND ORDER

ARONOVITZ, District Judge.

THIS CAUSE came before the Court upon the Debtor Lester J. Harris's Appeal from the Final Judgment of the Bankruptcy Court. The facts are not in dispute, and can be summarized as follows.

In 1975, the Florida Home Insurance Company, an insurance agency, was formed with Harris as its vice president. During the time it did business, the fidelity and honesty of its employees, including Harris, were guaranteed by a standard employees' fidelity bond, issued by the Appellee Fidelity and Deposit Company of Maryland [F & D]. The amount of the fidelity bond was $500,000. Florida Home was in business until late 1978 or early 1979, when it ran into financial difficulties. As a result of its inability to continue doing business, Florida Home went into receivership, and the Florida Department of Insurance took over as receiver.

In its capacity as receiver, the Department of Insurance sued F & D on the fidelity bond in state court; F & D subsequently removed the action to the United States District Court for the Northern District of Florida, where it is currently pending. The Department of Insurance's Complaint alleges that the President and Secretary of Florida Home, Daniel W. McCormack, Jr. and David K. Harris, respectively, and the Appellant herein, Lester J. Harris, converted and diverted premium payments to their own use. It is this course of conduct which allegedly rendered Florida Home incapable of continuing business. The Complaint further alleges that F & D has a contractual duty under the fidelity bond to reimburse the Department of Insurance, and that it has refused to do. The Department of Insurance therefore seeks damages against F & D for the full amount of the $500,000 fidelity bond. The Department of Insurance, however, has not named either the Debtor, Lester J. Harris, or the other former Florida Home officers, Daniel W. McCormack, Jr. and David K. Harris, as defendants in the action currently pending in the Northern District of Florida.

Prior to the filing of that action, Lester J. Harris filed his Petition in Bankruptcy in the Southern District of Florida. The Department of Insurance has appeared in this action by filing a Complaint to Determine Dischargeability of Debt, and a Proof of Claim. The allegations in these documents pertain to the same activities alleged to have occurred in the Northern District of Florida action. The Department of Insurance has voluntarily dismissed the Complaint to Determine Dischargeability; it has not, however, withdrawn its Proof of Claim, which is still before the Bankruptcy Court below.

F & D's response to the Petition in Bankruptcy was two–fold. First, it filed a Complaint to Determine Dischargeability of Debt in the bankruptcy action. It is this Complaint which is the subject of the instant appeal. Unlike the Department of Insurance, however, F & D has not filed a Proof of Claim in the Bankruptcy Court. Second, F & D filed a Third Party Complaint against Lester J. Harris in the Northern District of Florida action. That Third Party Complaint is for indemnification: it alleges that if the Department of Insurance recovers against F & D on the fidelity bond, then Lester J. Harris will be liable over to F & D for whatever amount the Department of Insurance recovers.

In its Complaint to Determine Dischargeability of Debt filed below, F & D sought two forms of relief. The first was a modification of the automatic stay which prevented the Northern District of Florida action from going forward. By seeking this relief, F & D argues that the issue of Harris' fraud is more appropriately determined in the Northern District of Florida. The second form of relief sought by F & D was a declaratory judgment, stating that if F & D prevails on its Third Party Complaint against Harris in the Northern District of Florida action (which would mean that the Department of Insurance had prevailed over F & D in that action), then that judgment would be *a fortiori* non-dischargeable under 11 U.S.C. § 523(a)(2) and (4).

The Bankruptcy Court granted both forms of relief. The Court rejected Harris' request to bring the Third Party Complaint in the Northern District of Florida into the Bankruptcy Court under 28 U.S.C. § 1471, stating that such an action "would have the tail wagging the dog." Accordingly, the automatic stay was modified to permit the Northern District of Florida action to proceed to judgment. The Bankruptcy Court also issued the requested declaratory judgment. In its view, "there is no way that [F & D] could obtain a judgment against [Harris] on its third party complaint without that judgment being res judicata as to all the issues necessary to make that claim non–dischargeable under 11 U.S.C. § 523(a)(4)."[1] On that basis, the Bankrupt-

---

1. Although the Bankruptcy Court used the term "res judicata," it is clear that the issue of dischargeability of Harris' debt is not before the court in the Northern District of Florida. Accordingly, the more precise terminology is collateral estoppel or issue preclusion, as applied to the issue of Harris' alleged fraud.

cy Court issued a declaratory judgment stating that "any judgment [F & D] obtains will be, a fortiori, non–dischargeable under 11 U.S.C. § 523(a)(4)." Harris has appealed both rulings.

## I.

### MODIFICATION OF THE AUTOMATIC STAY

■ At the hearing before this Court, both parties agreed that under the 1978 Bankruptcy Code, the Bankruptcy Court retains the discretion it had under the former Bankruptcy Act to modify the stay and permit actions involving the Debtor in other forums to proceed. *See, e. g., In re Lebow*, 397 F.Supp. 487 (S.D.N.Y.1975). In this appeal, however, Harris contends that in view of the Code's policy of providing the Debtor with a "fresh start" and a rapid determination of his liabilities, the Bankruptcy Court abused its discretion in permitting the action in the Northern District of Florida to proceed.

An almost identical factual pattern confronted the Court in *In re Olmstead*, 608 F.2d 1365 (10th Cir. 1979). There, the Federal Deposit Insurance Company, as receiver of a bank, filed suit against Transamerica Insurance Company on two bankers' blanket bonds. The bonds had guaranteed the honesty of Olmstead, the Bankrupt. Transamerica therefore impleaded Olmstead. When Olmstead filed his petition for bankruptcy, Transamerica requested modification of the automatic stay to permit the FDIC's previously filed action, and Transamerica's third party complaint thereto, to proceed. The Bankruptcy Court granted the modification and permitted the prior action to proceed. In affirming, the Tenth Circuit held that the Bankruptcy Court's decision was within its discretion:

> It is obvious ... that the bankruptcy court will save considerable time, effort, and money by awaiting the outcome of the liability proceeding and reviewing facts there presented to liquidate and determine dischargeability of the debt.

Consequently, we cannot say that the bankruptcy court abused its discretion by deferring its determination of dischargeability until the *FDIC v. Transamerica v. Olmstead action is concluded. The judgment and order of the district court is therefore Affirmed.*

608 F.2d at 1368.

■ As in *Olmstead*, this Court finds that the Bankruptcy Court in the instant case acted within its discretion in allowing the action in the Northern District of Florida to proceed to judgment. As the Bankruptcy Court noted in different terms, adjudication of a Third Party Complaint while the main action is still pending would be putting the cart before the horse. If F & D prevails against the Department of Insurance in the Northern District of Florida action, the Bankruptcy Court would have wasted its time and effort. Accordingly, this Court finds that the Bankruptcy Court had the discretion to modify the automatic stay, and it properly acted within that discretion in permitting the prosecution of the action in the Northern District of Florida.

## II.

### ENTRY OF THE DECLARATORY JUDGMENT

While maintaining that the action should not be permitted to proceed in the Northern District of Florida, Harris argues that even if this position is rejected, the Bankruptcy Court erred in entering its declaratory judgment. Upon consideration of the procedural posture of the case, this Court concludes that Harris is correct in this respect, and finds that the declaratory judgment was improvidently entered.

■ The basis for the entry of the declaratory judgment was the Bankruptcy Court's conclusion that a decision in the Northern District of Florida action would necessarily be "res judicata as to all the issues necessary to make [F & D's] claim non–dischargeable under 11 U.S.C. 523(a)(4)." But the decision of whether a judgment has a

*res judicata* or collateral estoppel impact on the dischargeability of a debt in bankruptcy requires a careful consideration into the nature of the judgment and the factual findings upon which it is based. *See, e. g., Carey v. Lumber Co. v. Bell*, 615 F.2d 370 (5th Cir. 1980). When a declaratory judgment is entered on the basis of the collateral impact of another judgment not yet rendered, as was done here, this kind of careful consideration is not possible.

This was implicitly recognized in *Austin v. Wendell–West Co.*, 539 F.2d 71 (9th Cir. 1976). In that case, creditors had filed actions for fraud and misrepresentation against the debtor in California state court prior to its filing the petition in bankruptcy. The Court granted the creditors' motion to modify the stay and to permit the state court actions to continue. In so doing, the Court recognized that "these allegations [in the state court actions], if proven, may be grounds for holding that the debts on the California judgments derived from these actions, if any, are non–dischargeable." *Id.* at 74. The Court then proceeded to explain the procedure that would be used after the state courts had entered their judgments.

> Upon completion of the California actions, this Court may review the judgments and/or other records of these proceedings and may ask for further evidence to determine the issue of dischargeability. The record of the California actions will include either the Findings of Fact of a trial judge or the answers by a jury to special interrogatories on the issues of fraud relevant to the question of dischargeability which will be presented to this Court. If upon reviewing such documents, the bankruptcy court is persuaded that the relevant issues with regard to dischargeability under the Bankruptcy Act have been fully addressed by the Findings of Fact or special interrogatories, it may then enter a determination of dischargeability. If the information submitted from the California courts does not sufficiently cover the issues presented to this bankruptcy court, a judge may then ask that further evidence be presented as it may require.

*Id.* at 74–75. This Court finds the *Austin* approach to be more prudent than that utilized by the Bankruptcy Court in the instant case, as it allows the Bankruptcy Court to retain jurisdiction of the Complaint for Non–Dischargeability and permits a more precise application of collateral estoppel.

The *Olmstead* case, discussed above, also is relevant to the question of the advisability of declaratory relief on facts substantially identical to those here. In ruling that the Bankruptcy Court had the discretion to modify the automatic stay, the Tenth Circuit predicated its holding on the fact that the Bankruptcy Court would still fulfill its statutory duty of ultimately determining the dischargeability of the debt. It was the retention of jurisdiction pending the outcome of the parallel proceedings that gave the Bankruptcy Court the power to modify the stay:

> [By modifying the stay, the] bankruptcy court is not abdicating its duty to determine dischargeability of the debt; it is only deferring that determination until another court determines Olmstead's liability. When the bankruptcy court finally determines dischargeability of the debt it will carry the same effect as if the determination had been made prior to conclusion of the personal liability action.

608 F.2d at 1367. In contrast, the declaratory relief entered by the Bankruptcy Court below amounted to an abdication of the Court's responsibility. No evidence of fraud, either by prior judgment or other proof, has been brought before the Bankruptcy Court, yet Harris may find himself liable for a $500,000 non–dischargeable obligation solely on the basis of a parallel case that has not, at this time, been decided. Harris is entitled to have the Bankruptcy Court reach a decision on the dischargeability of the debt by considering all competent and relevant evidence. An existing judgment may be such relevant evidence; but a hypothetical judgment is not.

The recent case of *Franks v. Thomason*, 4 B.R. 814 (N.D.Ga.1980),[2] also demonstrates the inadvisability of giving collateral estoppel effect to a judgment not yet entered. In that case, Franks obtained a $20,000 judgment against Thomason in federal court for violation of the Fair Credit Reporting Act. Thomason had impermissibly disclosed credit data relating to Franks to the media. Included in Franks' recovery were punitive damages, resulting from the court's finding that Thomason had acted "willfully."

Thomason then filed his petition in bankruptcy, and Franks opposed the discharge of his judgment under former § 17(a)(8) of the Bankruptcy Act, which denied discharge for "willful ... injuries to the person or property or another ...." Franks moved for summary judgment on the basis of the prior judgment for $20,000, asserting that the prior proceeding established that Thomason's debt, since incurred from willful conduct, was non–dischargeable. The Bankruptcy Court refused to consider any evidence besides the prior judgment and the proceedings pertaining to it, and granted summary judgment.

The district court reversed. It held that the bankruptcy court could not so lightly apply collateral estoppel and had to consider matters that had not been before the court rendering the original judgment. The ultimate decision on dischargeability, the Court stated, had to be made by the Bankruptcy Court, and collateral estoppel would not suffice as a substitute for the exercise of that responsibility:

> ... this court is persuaded that the prevailing trend of recent authority points to the inapplicability of collateral estoppel to the ultimate question of dischargeability concerning [prior] judgments.

> .    .    .    .    .

> Based on the foregoing, the court concludes that the bankruptcy court erred in refusing to consider both extrinsic evidence and evidence within the record of the underlying suit.

2. The case has not yet appeared in the advance sheets as of this writing.

*Id.*, at 820. The Court went on to describe the proper role of collateral estoppel in the Bankruptcy Court:

> The court must make clear ... that it does not hold the view expressed by other courts that "there is no room for the application of the technical doctrine of collateral estoppel in determining the nondischargeability of debts described in ... the Bankruptcy Act." ... The bankruptcy judge must necessarily tailor his application of collateral estoppel to the circumstances of the case before him, consistent with its purposes and the countervailing intent of Congress. The ultimate finding of whether an injury was willful and malicious ... is solely the province of the bankruptcy court; those subordinate factual findings that are necessary to that ultimate determination, that have not been actually and necessarily litigated or that are not discernible from the record, must also be determined by it after hearing all relevant evidence that is presented by the parties.

*Id.* at 820. In the case *sub judice*, the Bankruptcy Court has foreclosed Harris from calling any matters to its attention not raised in the Northern District of Florida action, except by way of a motion for relief from judgment. As pointed out in the following paragraph, Harris is entitled to more protection than the limited relief available through a post–judgment motion.

■ The Bankruptcy Court itself recognized that difficulties could arise from the declaratory decree. In its Judgment, the Bankruptcy Court stated it would retain jurisdiction "to clarify this judgment on either party's motion, in the event that presently unforeseen developments in [the Northern District of Florida] litigation make this court's declaration of non–dischargeability uncertain in its application." By requiring the Debtor to seek relief from its judgment, however, the Bankruptcy Court placed the burden of overcoming its judgment on Harris. This is a burden he should not have to bear, as the law is clear that the burden of proving the non–dis-

chargeability of a debt must initially rest upon F & D. *See Gardner v. American Century Mortgage Investors*, 577 F.2d 928 (5th Cir. 1978).[3] At this point in the litigation, it is apparent that F & D has not produced a scintilla of evidence on the issue of Harris' alleged fraud.

Accordingly, for the reasons set forth above, it is hereby

ORDERED AND ADJUDGED as follows:

1. The Bankruptcy Court's decision to allow the action between the Department of Insurance, F & D, and Harris currently pending in the Northern District of Florida to proceed by modifying the automatic stay is AFFIRMED.

2. The declaratory judgment stating that "[a]ny judgment [F & D] obtains against [Harris] will be, a fortiori, non–dischargeable under 11 U.S.C. § 523(a)(4)" is REVERSED and REMANDED for future proceedings consistent herewith or as permitted by any other method of procedure authorized by the Code.

---

**3.** It is also arguable that the standard for proving fraud on a fidelity bond and the standard of proving fraud for non-dischargeability in bankruptcy under 11 U.S.C. § 523(a)(4) are not the same. *Compare Miami National Bank v. Pennsylvania Insurance Co.*, 314 F.Supp. 858 (S.D.Fla.1970) *with Matter of Fleming*, 409 F.Supp. 415 (S.D.Miss.1972). Whether specific conduct is "fraudulent" so as to prevent dischargeability in bankruptcy is exclusively a question of federal law. *See Matter of Angelle*, 610 F.2d 1335 (5th Cir. 1980); *In re Johnson*, 323 F.2d 574 (3d Cir. 1963).