In re E. Peter HOFFMAN, Jr., aka Edgar Peter Hoffman, Jr., Debtor.

A. Vincent HOENIG, II and Cynthia Hoenig, Plaintiffs,

v.

E. Peter HOFFMAN, Jr., aka Edgar Peter Hoffman, Jr., Defendant.

FARHA SALES, INC., and Fred M. Farha, Plaintiffs,

v.

E. Peter HOFFMAN, Jr., aka Edgar Peter Hoffman, Jr., Defendant.

Bankruptcy No. 82–02497.
Adv. Nos. 83–0324, 83–0439.

United States Bankruptcy Court, W.D. Oklahoma.

Oct. 19, 1983.

| Date | Yield | |
|---|---|---|
| November 1988 | 11.12 | = 11.19% |
| November 1988 | 11.26 | |
| January 1989 | 11.41 | |
| April 1989 | 11.49 | |

David Kline, Timothy Kline and Vickie S. Angus, of Kline & Kline, Oklahoma City, Okl., for debtor/defendant.

Frank C. Razzano, of Shea & Gould, Washington, D.C.; Burck Bailey and Doneen Douglas Jones of Feller, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Okl., for A. Vincent Hoenig, II and Cynthia Hoenig.

Kenneth N. McKinney and Ronald L. Walker, of McKinney, Stringer & Webster, Oklahoma City, Okl., for Farha Sales, Inc. and Fred M. Farha.

## MEMORANDUM DECISION AND ORDER

ROBERT L. BERRY, Bankruptcy Judge.

These adversary proceedings have been consolidated solely for purposes of requested modification of the automatic stay.

On October 13, 1982, A. Vincent Hoenig, II and Cynthia Hoenig (hereinafter "the Hoenigs") commenced an action in the United States District Court for the Western District of Oklahoma styled *A. Vincent Hoenig, II and Cynthia H. Hoenig v. Rotan Mosle, Inc., Dean Witter Reynolds, Inc., E. Peter Hoffman, Jr., and Joe C. Crouch,* Civ. No. 82–1765–T. The Complaint alleges that the defendants churned the Hoenigs' stock trading margin accounts, made untrue statements of material facts and omitted to state material facts in connection with purchases and sales of securities. The Hoenigs allege that the defendants violated §§ 17(a) and 12(2) of the Securities Act of 1933, 15 U.S.C. § 77q and § 77*l*(2), § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10(b)–5 promulgated thereunder, 17 C.F.R. 240.10b–5, and

ed for each month for use in computing the overall average.

§ 408(a)(2) and (b) of the Oklahoma Securities Act, 71 O.S.1981 § 408. The Hoenigs further allege that the defendants committed common-law fraud and breached their contracts with, and fiduciary duty of care owed to, the Hoenigs.

On September 13, 1982, Farha Sales, Inc., and Fred M. Farha (hereinafter "Farha") commenced an action in the United States District Court for the Western District of Oklahoma styled *Farha Sales, Inc. and Fred M. Farha v. Rotan Mosle, Inc., and E. Peter Hoffman, Jr.,* Civ. No. 82–1466–E. This Complaint alleged essentially the same violations and accusations as did the Complaint filed by the Hoenigs, together with an allegation that the defendants were in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968.

On December 22, 1982, the debtor, E. Peter Hoffman, Jr. (hereinafter "Hoffman") filed his voluntary petition in bankruptcy.

On May 11, 1983, Farha filed its Adversary Complaint against Hoffman in this Court, reiterating the allegations enumerated in Civ. No. 82–1466–E.

Further, on May 11, 1983, Farha filed its Application for Transfer to District Court its adversary proceeding pending against Hoffman in this Court. This Application came on for hearing on June 6, 1983. On June 13, 1983, this Court entered its Order whereby the issue of whether the automatic stay should be modified, so as to permit Civ. No. 82–1466–E currently pending in the United States District Court for the Western District of Oklahoma to proceed, would be submitted on briefs. The automatic stay was to remain in full force and effect until such time as this Court rendered its decision.

On April 27, 1983, the Hoenigs filed their Adversary Complaint against Hoffman, requesting relief from the automatic stay in order that they may proceed in Civ. No. 82–1765–T, currently pending in the United States District Court for the Western District of Oklahoma.[1]

On June 2, 1983, this Court entered its Order whereby the issue of modification of the automatic stay as it pertains to the Hoenigs would be submitted and determined on briefs. The automatic stay would remain in full force and effect until such time as a decision by this Court is made.

Relief from the automatic stay is provided for pursuant to § 362(d) which states that relief from the stay may be provided for cause. 11 U.S.C. § 362(d)(1). Whether the facts before us constitute sufficient "cause" will be dispositive of our decision.

In *In re Olmstead,* 608 F.2d 1365 (10th Cir.1979), the Tenth Circuit addressed the issue of relief from the automatic stay. In a *per curiam* opinion, the Court held that it was not an abuse of discretion on the part of the bankruptcy court for the court to lift the automatic stay and thereby defer its determination of the dischargeability of a debt until the creditor's claim was adjudicated in another court of competent jurisdiction. This is the relief which the Hoenigs and Farha (collectively, "Plaintiffs") seek: modification of the automatic stay and allowance of their claim against Hoffman and the other named defendants to proceed (liquidate the claim) with this Court ultimately determining the dischargeability of the claim.

*Olmstead* was relied on by the court in *In re Harris,* 7 B.R. 284 (D.C.D.S.D.Fla.1980). Recognizing that the *Olmstead* Court found a lack of abuse of discretion on the part of the bankruptcy judge, the *Harris* Court found similarly, noting that "[t]he Tenth Circuit predicated its holding on the fact that the Bankruptcy Court would still fulfill its statutory duty of ultimately determining the dischargeability of the debt." 7 B.R. at 287.

*In re Rounseville,* 20 B.R. 892 (Bkrtcy.D. R.I.1982), recognized that the bankruptcy court clearly has the authority to modify the automatic stay pursuant to 11 U.S.C.

---

1. Prior to the enactment of the new Bankruptcy Rules, effective August 1, 1983, relief from the automatic stay was by adversary proceeding. B.R. 701.

§ 362(d)(1). Citing *In re Harris, supra* as helpful background material, the Court stated:

> [Debtor] is not placed under any undue hardship by being required to defend the action there, [state court] because a determination of the same facts and issues which bear upon the dischargeability question must ultimately be made in some forum, whether it is the state court or the Bankruptcy Court. Since both counsel agree that the state court action can be heard without undue delay, there appears to be no prejudice due to inordinate passage of time.

20 B.R. at 893.

Plaintiffs have relied on *In re Olmstead, supra; In re Harris, supra;* and *In re Rounseville, supra. Olmstead* is the foundation of this triumverate. *Harris* relies on *Olmstead* and *Rounseville* relies on *Harris* as providing background material.

*Harris,* while relying on *Olmstead* chose not to explore the reasoning contained behind the *Olmstead* decision. Rather, it noted that the Tenth Circuit held that the bankruptcy court did not abuse its discretion in its deciding that considerable time would be saved by allowing the claim to be liquidated in another court. As *Olmstead* is the foundation opinion, we believe a closer analysis is mandated.

█ *Olmstead* was decided under the Bankruptcy Act of 1898. Section 17 of the Act, 11 U.S.C. § 35, provided that only *provable* debts could be discharged in bankruptcy. Section 57(d) of the Act, 11 U.S.C. § 93(d), required contingent or unliquidated claims be liquidated or reasonably estimated in a manner and within a time directed by the court. This subsection was interpreted as giving the bankruptcy court discretion to choose the most appropriate means of liquidating a claim. *See Wood v. Fiedler,* 548 F.2d 216, 218–19 (8th Cir.1977). "Consequently, it is within the bankruptcy court's discretion to determine how the claim will be liquidated, whether that be by judgment of another court or by estimation on its own behalf." *In re Olmstead, supra* at 1367. It can be seen then, that *Olmstead*

was addressing the discretion involved in a bankruptcy court's determination of the proper forum for liquidation of an unliquidated claim. The Bankruptcy Reform Act of 1978 (the Bankruptcy Code) abolished this bifurcation of provable and unliquidated claims. Now, under the broad definition of "claim" pursuant to 11 U.S.C. § 101(4), the bankruptcy court need not concern itself with provability. *Harris* did not address this issue; *Rounseville* mentioned *Harris* barely in passing. Under the Bankruptcy Code then, the basis for the Tenth Circuit's finding of lack of abuse of discretion by the bankruptcy court in *Olmstead* appears somewhat doubtful; *Harris* and *Rounseville* are, *a fortiori,* undermined accordingly.

Plaintiffs concur that they are not questioning the right of this Court to determine the issue of dischargeability. Rather, they posit that lifting the automatic stay will foster judicial economy; litigants will save expenditures of time and money; and that permitting liquidation in courts which possess more expertise will facilitate the determination of dischargeability.

*Farha* makes the contention that the primary means of achieving the "fresh start" is to provide a single forum for satisfaction of indebtedness and that nothing in this concept of one-forum satisfaction requires that all debts be *determined* in one forum, citing *Matter of Gary Aircraft Corp.* 698 F.2d 775 (5th Cir.1983).

> The primary purpose of a proceeding in bankruptcy is to insure that all creditors are treated fairly. (footnote omitted). This primary purpose makes it absolutely essential that all claims be *satisfied* in one forum. The ancillary jurisdiction of a bankruptcy court to liquidate claims, however, involves more nearly the administrative convenience of settling all disputes in a single forum; it just is not as vital to the purpose of bankruptcy. [A] bankruptcy court should defer a complicated, technical dispute to a specialized forum. (emphasis in original).

*Id.* at 783. *Gary* dealt with government contracting disputes. While ruling that

"[a]llowing a Board of Contract Appeals to liquidate claims arising out of a government contract would not impair the primary goal of bankruptcy—requiring satisfaction of all claims against the bankrupt's estate proceed in a central forum", the Court noted that "[g]overnment contracting law tends to be technical and esoteric." 698 F.2d at 783–84. Our reading of *Gary* is that the Court's reasoning for permitting the liquidation of claims to proceed before the Board of Contract Appeals was owing to the "technical and esoteric" nature of government contracts. "[I]t would be a misreading of our developing jurisprudence to believe that a bankruptcy court should be vested with nigh-unreviewable discretion to adjudicate highly esoteric and technical claims. . . ." *Id.* at 785. After a review of the Complaints and their alleged violations of securities law, we are of the opinion that while the issues are complex, they do not reach the status of a "highly esoteric and technical" nature. Nevertheless, we believe that the proper forum for resolution of such allegations lies elsewhere.

 Congress intended that the automatic stay have broad application. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 340–42 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 49–51 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Nevertheless, Congress recognized that the stay should be lifted in appropriate circumstances.

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

H.R.Rep. 95–595, 95th Cong., 1st Sess. 341 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 50 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5836, 6297. While Hoffman has alleged that lifting the stay will operate as great prejudice, he does no more; the burden of proof required under 11 U.S.C. § 362(g)(2) has not been adequately met. True, Hoffman has, no doubt quite accurately, indicated that the securities litigation will entail great expense in terms of time and money. However, the high cost of defending is not, by itself, "great prejudice" which would bar modification of the stay. *See Matter of McGraw,* 18 B.R. 140 (Bkrtcy. W.D.Wis.1982). Owing to the presence of co-defendants, over whom this Court has no jurisdiction, we are of the opinion that causing the Plaintiffs to proceed once against Hoffman in a bankruptcy proceeding and then against Hoffman and the co-defendants in District Court would result in an even greater prejudice to the Plaintiffs.

Hoffman alleges that the District Court litigation involves issues in which he has little, if any, interest. After a review of the respective Complaints filed by each of the Plaintiffs, we do not share in this opinion. That Hoffman's alleged activities were *faits accomplis* with Hoffman as the moving force, we have no doubt.

Finally, we come to the Plaintiffs' request for a jury trial. Farha made its demand in its Adversary Complaint. We noted the Hoenigs' oral demand for a jury trial in our Order of June 2, 1983. Hoffman argues that dischargeability issues are exclusively within the province of the bankruptcy court and involve no right to jury trial as to alleged fraud. Rather, according to Hoffman, they should be tried first because of their importance to the debtor's "fresh start" and then a jury trial can subsequently be held, if relevant, on remaining issues. However, Hoffman cites no authority for such assertion.

 Jury trials are provided for under 28 U.S.C. § 1480:

> (a) Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury, in a case under title 11 or in a proceeding arising under title 11 or arising in or related to a case under title 11, that is provided by any statute in effect on September 30, 1979.

Nevertheless, as a result of the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,*

458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), bankruptcy courts may not conduct jury trials. Accordingly, the United States District Courts adopted, under various titles, a District Court Rule on Referral of Bankruptcy Cases.[2] This rule specifically provides that bankruptcy judges may not conduct jury trials. Misc.Rule No. 9(d)(1)(D), District Court Rule for Western District of Oklahoma.

That the right to a jury trial exists in suits seeking damages for alleged violations of federal securities laws has been well established. *See Aid Auto Stores, Inc. v. Cannon,* 525 F.2d 468 (2d Cir.1975) (right to jury trial when seeking damages for alleged violation of § 12(1, 2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(1, 2); § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b)); *Dasho v. Susquehanna Corporation,* 461 F.2d 11 (7th Cir.1972), *cert. denied* 408 U.S. 925, 92 S.Ct. 2496, 33 L.Ed.2d 336 (1972) (jury trial is appropriate in action to recover damages for violation of rule implementing statute which prohibits use of fraudulent or manipulative device in connection with the purchase or sale of securities. Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j(b); Rule 10b–5, 17 C.F.R. § 240.10b–5). For an exhaustive analysis of the jury issue, see *In re Japanese Electronic Products Antitrust Litigation,* 478 F.Supp. 889 (E.D.Pa.1979). In light of decisions by the Supreme Court which have required jury trials of issues that might have been decided by a judge under a strict historical test of the nature of the suit, the presumption is to favor granting of jury trials. *See* 9 C. Wright and A. Miller, *Federal Practice and Procedure,* § 2302 at 17–18 (1971).

Based on all of the above, therefore, the automatic stay shall be modified for the sole purpose of permitting Plaintiffs to proceed with their respective Complaints against Hoffman currently pending in District Court. By modifying the stay, we are not abdicating our duty to determine the

dischargeability of the debt. Rather, we are deferring that determination until the District Court determines liability.

Judgment will be entered accordingly.

Pursuant to Bankruptcy Rule 7052, this Memorandum Decision and Order constitutes the findings of fact and conclusions of law.

---

2. While the constitutionality of the Referral Rule has recently come under attack, *see In re Romeo J. Roy, Inc.,* 32 B.R. 1008 (D.C.D.Me.

1983) none of the parties have questioned its validity and we decline to do so.