In re **TOWNER PETROLEUM COMPANY, Debtor.**

**Bankruptcy No. BK–84–02814–P.**

United States Bankruptcy Court, W.D. Oklahoma.

April 10, 1985.

V. Burns Hargis and Ross A. Plourde of Reynolds, Ridings and Hargis, Oklahoma City, Okl., for Towner Petroleum Co.

Thomas A. Masterson, Thomas B. Kenworthy and Jami Wintz McKeon of Morgan, Lewis and Bockius, Philadelphia, Pa.; Thomas Henry Coleman, Mark C. Fields

and John A. Belcher of Morgan, Lewis and Bockius, Los Angeles, Cal.; John T. Edwards of Monnet, Hayes, Bullis, Thompson and Edwards, Oklahoma City, Okl., for John T. Synnestvedt, et al.

D. Kent Meyers of Crowe and Dunlevy, Oklahoma City, Okl.; Daniel C. Stewart, W. Ted Minick and Russell L. Munsch of Winstead, McGuire, Sechrest and Minick, Dallas, Tex. for the Bank Group.

Robert C. Bailey of McClelland, Collins, Bailey, Bailey and Manchester, Oklahoma City, Okl. for the Official Unsecured Creditors' Committee.

## MEMORANDUM OPINION AND ORDER

ROBERT L. BERRY, Bankruptcy Judge.

This matter comes on for consideration of motion for modification of the automatic stay, 11 U.S.C. § 362. After hearing argument of counsel and having examined the pleadings, legal memoranda and authorities cited therein, the Court finds as follows:

John T. Synnestvedt and others (hereinafter the "movants") are plaintiffs in a pending lawsuit in the United States District Court for the Eastern District of Pennsylvania and captioned *Synnestvedt, et al. v. Towner Petroleum Company, et al.*, 84–2635 (E.D.Pa.1984) (hereinafter referred to as the "Towner suit").

The Towner suit arises out of alleged violations committed by Towner Petroleum Company (hereinafter "Towner"), debtor and debtor-in-possession herein, and certain of its former officers and directors in connection with the formation and business of an oil gas exploration and development partnership known as the Towner Leveraged Private Program 1981–B, Ltd. (hereinafter "1981–B"); movants are limited part-

ners of 1981–B. Defendants in the Towner suit are charged, *inter alia*, with violations of the securities laws, violations of the Racketeer Influenced and Corrupt Organizations Act, common law fraud, negligent misrepresentations and breach of fiduciary duty. Derivative claims and claims for breach of contract and an accounting are asserted against Towner only.

Twelve other federal actions in which Towner is not a party have been initiated against broker-dealers in connection with the sale of limited partnership interests in 1981–B. Upon motion of Towner, the Judicial Panel on Multidistrict Litigation transferred all of these actions to the United States District Court for the Eastern District of Pennsylvania for consolidation with the Towner suit with respect to pretrial proceedings only.

On September 25, 1984, Towner filed in this Court its petition for relief in bankruptcy under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* The instant motion for relief from the automatic stay, in order that the Towner suit may proceed to judgment, was filed on December 5, 1984.[1] Towner has opposed the instant motion, and has been joined in its opposition by 1) Marine Midland Bank, N.A., as agent for itself and Bank of America National Trust and Savings Association, Interfirst Bank Dallas, N.A., Security Pacific National Bank and Bancohio National Bank (the "Bank group"), these entities comprising the secured creditors of Towner and, 2) the Official Unsecured Creditors' Committee.

In its brief in opposition to the motion, Towner argues three propositions: 1) any potential claim of the movants would be subordinated pursuant to 11 U.S.C. § 510 [2];

---

1. While the initial motion sought relief from the stay in order that the Towner suit may proceed to judgment, both at oral argument and in the legal memoranda submitted, the issue as presented is whether relief from the stay should be granted in order that pretrial discovery may proceed. Our opinion is limited to this issue.

2. Section 510(b) provides:

For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or inter-

accordingly, allowing the instant motion would be superfluous; 2) this Court has the duty to estimate a claim, pursuant to 11 U.S.C. § 502[3], thereby obviating the need for granting the instant motion and, 3) permitting discovery to go forward in the multidistrict litigation would deleteriously impact on the debtor's attempts to effectuate a viable reorganization.

The sole issue before the Court is whether there exists sufficient cause for modification of the automatic stay in order to permit the seeking of discovery in the pending multidistrict litigation.[4]

In response to Towner's argument, the movants argue that 1) subordination pursuant to 11 U.S.C. § 510 does not justify continuance of the automatic stay; 2) relief from the automatic stay should be granted since any proceedings involving the issues presented in the multidistrict litigation will be subject to mandatory withdrawal and, 3) a district court must liquidate movants' claims regardless of whether said claims have been previously estimated by this Court.

With certain exceptions not relevant here [see, § 362(b) ], under 11 U.S.C. § 362(a)(1), the filing of a petition under Chapter 11 of the Bankruptcy Code operates as a stay of

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

Section 362(d) sets forth the circumstances upon which the court may grant relief from the automatic stay. This subsection provides, in pertinent part:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause,[5] ...

▆ The automatic stay implements two goals. First, it prevents the diminution or dissipation of the assets of the debtor estate during the pendency of the bankruptcy case. Second, it enables the debtor to avoid the multiplicity of claims against the debtor estate arising in different forums. *In re Curtis*, 40 B.R. 795 (Bankr.D. Utah 1984). It is intended

> to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts. The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another.

*Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2nd Cir. 1976), *cert. denied* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977). The underlying policy of the automatic stay is to protect the debtor's estate from the "chaos and wasteful depletion resulting from multifold, uncoordinated and possibly conflicting litigation." *In re Frigitemp Corp.*, 8 B.R. 284, 289 (S.D.N.Y.1981).

▆ While "cause" is left undefined by the Bankruptcy Code, the Congressional reports illustrate several situations in which it might be appropriate to modify the stay to permit litigation in another forum:

> The lack of adequate protection of an interest in property of the party requesting relief from the stay is one cause for

---

est represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

**3.** See discussion *infra*.

**4.** *Supra*, note 1.

**5.** Movants are not claiming interests in any property *per se* of the debtor, and therefore usual questions of evaluation, equity and adequate protection, need not concern us.

relief, but is not the only cause. As noted above, a desire to permit an action to proceed to completion in another tribunal may provide another cause. Other causes might include the lack of any connection with or interference with the pending bankruptcy case. For example, a divorce or child custody proceeding involving the debtor may bear no relation to the bankruptcy case. In that case, it should not be stayed. A probate proceeding in which the debtor is the executor or administrator of another's estate usually will not be related to the bankruptcy case, and should not be stayed. Generally, proceedings in which the debtor is a fiduciary, or involving postpetition activities of the debtor, need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors. The facts of each request will determine whether relief is appropriate under the circumstances.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 343–44 (1977); cf. S.Rep. No. 989, 95th Cong., 2d Sess. 52–53 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5838–5839, 6300.

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

Id., H.R.Rep. at 341; S.Rep. at 50, U.S. Code Cong. & Admin.News 1978, pp. 5836, 6297. As both parties have recognized, the decision is necessarily one involving an exercise of a court's discretion. See, e.g., In re Olmstead, 608 F.2d 1365 (10th Cir.1979) (it is within the bankruptcy court's discretion to determine how a contingent or unliquidated claim will be liquidated, whether by judgment of another court or by its own determination). The power to modify or vacate the stay is exercised by the bankruptcy court "according to the particular circumstances of the case and is to be

guided by considerations that under the law make for the ascertainment of what is just to the claimants, the debtor and the estate." *Foust v. Munson Steamship Lines,* 299 U.S. 77, 83, 57 S.Ct. 90, 93, 81 L.Ed. 49 (1936). Bankruptcy courts are courts of equity, *Marin v. England,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966), and suspension of § 362 automatic stay provisions may be consonant with equitable considerations. *Matthews v. Rosene,* 739 F.2d 249 (7th Cir.1984). Courts are to exercise "judgment which must weigh competing interests and maintain an even balance." *Landis v. North American Company,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936).

### Equitable Subordination

Whether or not concerns of equitable subordination should impinge upon decisions with respect to modification of the automatic stay is an issue in which bankruptcy courts are not in complete agreement. *Compare In re Saxon Industries, Inc.,* 43 Bankr. 64, 67 (Bankr.S.D.N.Y.1984) ("[s]ubordination ... is inappropriate for consideration in an automatic stay proceeding") *with In re Curtis, supra* (case law recognizes as a factor applicable to determining whether to modify the stay whether claim in question is subject to equitable subordination). *Cf. In re Lockwood,* 14 Bankr. 374 (Bankr.E.D.N.Y.1981) (when party seeks relief from automatic stay, validity of his claim is always proper matter to be heard and considered in determining whether such relief should be granted).

▮▮▮ Given that decisions on whether to modify or not to modify are subject to equitable concerns and a balancing of the interests of all the respective parties, to say that, as an absolute, consideration of equitable subordination has *no* import in such a context, is too harsh and stringent a viewpoint. Rather it is entitled to consideration. The amount of consideration will perforce be dictated by the surrounding

facts and circumstances of each individual situation.[6]

*Estimation of Claims*

 Section 502 of the Bankruptcy Code provides, in pertinent part: "There *shall* be estimated for purposes of allowance under this section—any contingent or unliquidated claim, fixing or liquidation of which, as the case may be, would unduly delay the administration of the case ..." (emphasis supplied). 11 U.S.C. § 502(c)(1). This language is mandatory, not permissive, and creates in the bankruptcy court an "affirmative duty", under certain circumstances, to estimate an unliquidated claim. *In re Nova Real Estate Inv. Trust,* 23 B.R. 62 (Bankr.E.D.Va.1982). "Section 502(c)(1) of the Code embodies Congress' determination that the bankruptcy courts are better equipped to evaluate the evidence supporting a particular claim *within the context of a particular bankruptcy proceeding.*" *Bittner v. Borne Chemical Co., Inc.,* 691 F.2d 134, 136 (3rd Cir.1982) (emphasis supplied).

 The process of determining the allowance of claims is of basic importance to the administration of a bankruptcy estate. *Garnder v. New Jersey,* 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947).

> A bankruptcy court in which an estate is being administered has full power to inquire into the validity of any alleged debt or obligation of the bankrupt upon which a demand or claim against the estate is based. *This is essential to the performance of the duties imposed upon it.* (emphasis supplied).

*Lesser v. Gray,* 236 U.S. 70, 74, 35 S.Ct. 227, 228, 59 L.Ed. 471 (1915). *See also, In re Unit Parts Co.,* 9 Bankr. 386 (W.D.Okla.

1981) (bankruptcy judge's "undoubted authority" to make claim estimations).

It is clear then that this Court has an affirmative duty to estimate movants' claims, under proper circumstances. Both *Bittner v. Borne Chemical Co., Inc., supra,* and *In re Nova Real Estate Inv. Trust, supra,* cited by the movants, did indeed provide for modification of the automatic stay to permit liquidation of claims to proceed in another forum, while simultaneously providing for estimation of the same claims in the bankruptcy court. However, neither of those cases address the issue of factors to be considered in modification of automatic stay questions. Both *are* quite clear that claim estimation is the duty of the bankruptcy court under the proper set of circumstances.

*Withdrawal From the Bankruptcy Court*

On July 10, 1984, the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353 (hereinafter the "'84 Act"), was enacted. The '84 Act provides, *inter alia,* that each district court may refer to the bankruptcy judges for the district "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157(a).[7]

The remainder of § 157 demonstrates the relationship between the two courts. Section 157(b) relates to "core proceedings" and provides in pertinent part:

> (1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11 or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

**6.** Given the present posture of this matter, we do not, however, consider equitable subordination for purposes of deciding the instant motion.

**7.** The District Court for the Western District of Oklahoma by order of March 4, 1985, made such referral effective as of July 10, 1984. This order repealed and rescinded Local Miscellaneous Rule No. 9 adopted December 22, 1982, and Supplemental Order entered on July 19, 1984.

Miscellaneous Rule No. 9 was the so-called "Emergency Rule", enacted in response to Congressional inaction in the wake of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (declaring a bankruptcy court's jurisdiction pursuant to 28 U.S.C. § 1471; as enacted by § 241(a) of the Bankruptcy Act of 1978, is violative of Article III of the United States Constitution).

(2) Core proceedings include, but are not limited to—

. . . . .

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirmation of a plan under chapter 11 or 13 of title 11 ...

. . . . .

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship ...[8]

Section 157(c) provides for "non-core proceedings":

(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

Referral to the bankruptcy court may also be withdrawn:

The district court may withdraw, in whole or in part, any case or proceeding referred under this section [§ 157], on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). The legislative history provides a clearer indication of the appropriate reading to be given to § 157(d):

The district court should withdraw [proceedings which require consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce] only if the court determines that the assertion that other laws regulating organizations or activities affecting interstate commerce are in fact likely to be considered, and should not allow a party to use this provision to require withdrawal where such laws are not material to resolution of the proceeding. *The district court should refuse withdrawal if withdrawal would unduly delay administration of the case, considering the status of the case, the importance of the proceeding to the case, and the relative caseloads of the district court and bankruptcy judge.*

130 Cong.Rec. S6081 (daily ed. June 19, 1984) (statement of Senator DeConcini) (emphasis supplied).

The multidistrict litigation herein involves the Securities Act of 1933, 15 U.S.C. §§ 77a, *et seq.,* the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.* and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968. As such, movants argue, they involve proceedings which "require consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce" and are therefore subject to mandatory withdrawal.[9]

---

8. Section 157(b)(2)(F), which confers jurisdiction of bankruptcy courts to determine, avoid or recover preferences, was recently held to be unconstitutional. *Matter of Associated Grocers* *of Nebraska Co-op, Inc.,* 46 B.R. 173 (Bankr.D. Neb.1985).

9. Query whether there exists that which cannot be even tangentially connected to interstate

Section 157(d) was the focus of recent discussion in the case of *In re White Motor Corp.*, 42 B.R. 693 (N.D.Ohio 1984). In *White* the Pension Benefit Guaranty Corporation, a federal government entity which held several of the largest claims against the debtor estate, contended that the '84 Act required withdrawal of the reference of those claims from the bankruptcy court. It was argued that withdrawal from the bankruptcy court was mandated as issues of claim resolution would involve the Employee Retirement Income Security Act of 1974 and the Internal Revenue Code.

In denying withdrawal, the Court in *White,* reading § 157(d) to require withdrawal not when non-Bankruptcy Code federal statutes would be *considered* but rather when such consideration is necessary for the *resolution* of a case or proceeding, held that the record before it did not warrant withdrawal based on the speculation about issues which may or may not arise and may or may not be germane to resolution of core proceedings inasmuch as to do so would be "inconsistent with the purposes underlying the very existence of the Bankruptcy Code." *In re White, supra,* at 705. *Cf. In re Johns-Manville Corp.*, 45 B.R. 823 (S.D.N.Y.1984) (assuming § 157(b)(5) requires all personal injury and wrongful death claims be tried in the district courts, immediate withdrawal and liquidation of claims from bankruptcy court is inappropriate. Even if Bankruptcy Code and '84 Act requires asbestos claims be tried, it is not required that immediate withdrawal of those claims occur before a reorganization plan has been confirmed).

*Prior Ruling of this Court*

In *In re Hoffman*, 33 B.R. 937 (Bankr.W. D.Okla.1983) this Court was faced with a situation similar to the one at present. The debtor had been sued, prior to the filing of bankruptcy, for allegedly violating securities laws and the Racketeer Influenced and Corrupt Organizations Act. Plaintiffs in that lawsuit moved for modification of the automatic stay in order that they may be permitted to "liquidate" any debt the debtor might owe them. Our granting of relief from the automatic stay was predicated on several factors. First was the fact that the ultimate resolution of dischargeability of debt would lie in this Court. In this regard modification of the automatic stay resulted in judicial economy—the district court would determine the dollar amount of, if any, of any claim the plaintiffs possessed against the debtor and this Court would decide whether such a claim was dischargeable in bankruptcy. Second, there were co-defendants over whom this Court could exercise no jurisdiction. Last was the plaintiff's request for a jury trial. At that time, pursuant to Misc. Rule No. 9(d)(1)(D) District Court Rule for Western District of Oklahoma, the so-called "Emergency Rule",[10] bankruptcy judges were not permitted to conduct jury trials. For these reasons the automatic stay was modified so that the lawsuit in district court could proceed to its conclusion. *See also In re Highcrest Management Co., Inc.*, 30 B.R. 776 (Bankr.S.D.N.Y.1983) (evidence supporting lifting of automatic stay for cause: 1) proceeding not a core proceeding, bankruptcy court could only submit findings of fact to district court; 2) jury trial demanded—unavailable under emergency rule; 3) reorganization was unlikely).

*Hoffman* cannot be relied on for precedent in this instance for two reasons. In the first instance, the present circumstances are factually different from those in *Hoffman.* Moreover, one of the reasons relied on in *Hoffman* is no longer valid.

The debtor in *Hoffman* filed for bankruptcy under Chapter 7 of title 11. Towner has filed for reorganization under Chapter 11 of title 11. The difference can-

---

commerce. *E.g., Katzenback v. McClung*, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964) (Title II of the Civil Rights Act of 1964, § 201(a)(b)(c) of the statute, forbidding racial discrimination by restaurants offering to serve interstate travelers or serving food a substantial portion of which has moved in interstate commerce, is a constitutional exercise of the commerce power, U.S. Const. art. I, § 8 cl. 3).

**10.** See note 7 *supra.*

not be overemphasized. The single focal point for Towner at present is the development and formulation of its plan of reorganization. Any deviation from this may detrimentally impact its chances for a successful reorganization. This consideration cannot be shrugged off as *de minimis. In re Curtis, supra; In re Penn-Dixie Industries, Inc.,* 6 Bankr. 832 (Bankr.S.D.N.Y. 1980).

■ With respect to jury trials, two comments are warranted. First, a jury trial generally is not available in proceedings to estimate claims pursuant to 11 U.S.C. § 502(c). *See Bittner v. Borne Chemical Co., Inc., supra,* at 135. ("It is conceivable that in rare and unusual cases ... a jury trial may be necessary to obtain a reasonably accurate valuation of the claims.); *see also* 3 L. King, *Collier on Bankruptcy,* § 502.03 at 502–75 (15th ed. 1985). Second, whether Misc. Rule No. 9(d)(1)(D) conflicts with Bankr.R. 9015 Fed.R.Bankr.P. [11] no longer concerns us. Subsequent to the enactment of the '84 Act, the District Court for the Western District of Oklahoma rescinded the "Emergency Rule" and in its stead adopted new rules for referral.[12] Rule B–14 provides in pertinent part:

> "The Bankruptcy Judges shall conduct jury trials in all core proceedings in which a party is entitled to trial by jury and a jury is timely demanded and in all non-core proceedings in which a party is entitled to trial by jury and a jury is timely demanded, in which all parties so consent in writing ...." [13]

**11.** Bankr.R. 9015(a) provides:
> Issues triable of right by jury shall, if timely demanded, be by jury, unless the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury.

*Title 28 U.S.C. § 1411 provides:*
> (a) Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim.

*Considerations, Burden of Proof*

■ The most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor to go forward in another forum is the effect of such litigation on the administration of the estate. Even slight interference with the administration may be sufficient to deny relief in the absence of a commensurate benefit. *In re Penn-Dixie Industries, Inc., supra.* The foregoing statement impacts directly on the burden of proof with respect to modification of the automatic stay. As in *Hoffman,* it is urged that modification of the automatic stay will result in great prejudice. While Towner did not present any direct evidence at the hearing, Towner did attach to its motion in opposition of movants' request for relief from the automatic stay, a copy of movants' request for production of documents and interrogatories filed in the multidistrict litigation. This Court is sufficiently familiar with oil and gas related matters to recognize that movants' requests would require sufficient time and effort, to be expended away from attempts at reorganization, so as to prejudice Towner's reorganization efforts.

Under the Bankruptcy Code, the burden of proof in stay litigation is governed by 11 U.S.C. § 362(g). That subsection states:
> (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—
>> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

> (b) The district court may order the issues arising under section 303 of title 11 to be tried without a jury.

**12.** See note 7 *supra.*

**13.** While the issue is not before us, the advisability of conducting a jury trial in a non-core proceeding appears questionable. Due to the *de novo* review standard of 28 U.S.C. § 157(c)(1), it makes little sense from a standpoint of judicial economy, to conduct what in effect is an advisory jury.

(2) the party opposing such relief has the burden of proof on all other issues.

One who seeks relief from the automatic stay must, in the first instance, establish a legally sufficient basis, i.e., "cause", for such relief. The burden then lies with the debtor that it is entitled to the stay. A creditor's unsupported allegation that continuance of the stay will cause it irreparable harm will not suffice. Advised of all the foregoing, we believe Towner has met its burden of proof.

With respect to the movants assertion that the instant proceeding is subject to mandatory withdrawal, we initially note that motions pursuant to § 157(d) are to be made to the district court. Assuming § 157(d) motions would be directed to this Court, nothing in the previous discussion of § 157 persuades us that withdrawal is mandated.[14] We *are* persuaded that claim estimation is within the province of the bankruptcy court and it is in fact the duty of the bankruptcy court to make such estimations under the proper circumstances. Further our decision in *Hoffman*, albeit pre-'84 Act, was not grounded on a finding that this Court was incapable of reviewing alleged violations of securities laws. *In re Hoffman, supra,* at 941.

In the context of dischargeability this Court has stressed the importance "that a careful analysis be made of the facts of each particular case .... It is vital to look to the particular circumstances of each case, each with their own legal subtleties and nuances...." *In re Lewis,* 31 B.R. 83, 86 (Bankr.W.D.Okla.1983). That statement is equally valid when considering whether "cause" is present such that the automatic stay be modified.

*Conclusion*

Clearly there are instances in which it is appropriate to grant relief from the automatic stay. We find, however, that at present this case would be more expedi-

tiously administered if the stay remained in effect. Relief from the stay would hinder, rather than assist, the economical administration of this case. The collateral benefits which the movants hope to achieve do not outweigh the potential for disruption and expense to the debtor's estate. Based on all the above, the motion for relief from the automatic stay shall be and hereby is, denied.[15] Pursuant to Bankr.R. 7052 this memorandum opinion constitutes our findings of fact and conclusions of law.

---

**14.** We also note that such motions are to be made "timely".

**15.** Nothing in our opinion today should be construed as a proscription against any future motions for relief from the stay be filed by these movants.