The CITIZENS NATIONAL BANK, GREENVILLE, TEXAS

v.

HAROLD MUNCE TOYOTA, INC.

Bankruptcy No. CA3-82-1020-F.

United States District Court,
N.D. Texas,
Dallas Division.

Dec. 5, 1983.

Joe Weis, Greenville, Tex., William L. Needler and Susan Gregory Barrera, Chicago, Ill., for plaintiff.

J. Harris Morgan, Greenville, Tex., Michael R. Rochelle, Dallas, Tex., for defendant.

MEMORANDUM ORDER

ROBERT W. PORTER, District Judge.

This case is brought before this Court on appeal from a ruling in favor of The Citizens National Bank of Greenville, Texas ("Citizens") in which the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, issued an order granting relief from an automatic stay pursuant to Section 362(b)(1) of the Bankruptcy Code of 1978, 11 U.S.C. § 362(b)(1). Harold Munce Toyota, Inc. ("Debtor"), the original party in bankruptcy, has challenged the ruling believing that the ownership of the inventory in question belongs to the Debtor thus giving no basis for a lifting of the automatic stay. The used car salesmanship enthusiasm of Citizens as is reflected in the selling of their position before the Bankruptcy Court impresses this Court, but as in used cars and sales, it is not the best deal on the market.

The scope of review for an order from a Bankruptcy Court under the 1978 Bankruptcy Reform Legislation continues to be a "clearly erroneous" standard. *In re Bleaufontaine, Inc.*, 634 F.2d 1383 (5th Cir.1981); 1 Collier on Bankruptcy ¶ 3.03(b) (15th Ed. 1979). An appellate court may not reverse simply because on the same evidence it may have reached a different result. *In Re Multiponics, Inc.*, 622 F.2d 709, 723 (5th Cir. 1980). In applying this standard, this Court must review the basis upon which the bankruptcy judge based his final decision of approval. In reliance on the record before this Court, it appears that the facts as presented do not support the conclusions reached by the Bankruptcy Court. This Court, therefore, reverses and remands this proceeding for further fact finding.

The facts as found in the record relating to this case are fairly clear cut even though the conclusions to be drawn from them are not. The Debtor sold new cars through a financial agreement originally consummated with Citizens. When the volume of business outgrew the Citizens capabilities, financial arrangements were made with the Ford Motor Credit Company and later with Borg Warner. Only the new car financial

arrangements were financed in this manner. The used cars were financed in a different and confusing manner.

The court below found that as old cars were traded in to the Debtor for new cars, Harold Munce, individually ("Mounce"), would in effect buy the traded-in used cars through financial arrangements and floor plans established between the Citizens and Mounce. The Bankruptcy Court appears to conclude that used cars would be traded in to Debtor, that Mounce would receive money from Citizens under a floor plan financial arrangement, and that Mounce would then buy the used cars by giving Debtor the money and having the used car titles given to Citizens under the floor plan financial arrangement as collateral. This Court finds no evidence to support the latter conclusions.

When the used cars were initially sold to the Debtor, no titles were conveyed to Mounce individually. All titles were signed off to the Debtor and held by Citizens (Tr. 20–21). At no time were titles actually transferred to Mounce. The general scenario of the transaction was that the cars were sold to the Debtor with the title and license going to the Bank directly, and the Bank giving the money directly to the Debtor (Tr. 42). No evidence has been introduced to show that used car titles were in Mounce's name and that transfer of title to Mounce occurred.

Handling of the used cars after the initial financial arrangement also evidences ownership by the Debtor. The evidence in the record shows that used cars were reconditioned and prepared for resale under the supervision and expense of the Debtor (Tr. 22). It appears that the sales of the used cars and the salesmen involved in such transactions were employed by the Debtor and had their services for selling used cars paid for by the Debtor. It also appears that the autos were sold as part of the dealer's inventory. No identification on the used cars themselves or at the place of business indicated that individuals who bought the used cars were dealing with Mounce rather than the Debtor (Tr. 21, 22, 45).

No evidence shows that Mounce either executed a consignment statement with the Debtor or signed any other type of sales agreement between himself as an individual and the dealership. This lack of evidence points to the opposite conclusion reached by the Bankruptcy Court that the used cars were actually a portion of the Debtor's inventory.

The intent of the parties also did not show a desire to exclude the used cars from the dealer's inventory. Mr. Mounce indicated in his deposition that he did not intend to assert any personal rights in the automobiles. He assumed that the loans by Citizens were to be handled by him like a guarantee (Tr. 18). Such frame of mind indicates that Mounce did not at that time assert personal rights in the used cars. As such, the used cars remained a portion of the used car inventory of the Debtor.

Further facts otherwise absent from the record which might enlighten the Court on the ownership are the handling of transactions after the reconditioned used cars were sold by the dealership, and tangible corporate and individual records showing actual ownership entries. Appropriate handling and segregation of accounts at any point between Debtor and Mounce, as reflected by records or transactions, may indicate an intent by the parties to handle the used cars as assets of Mounce, individually. Such evidence might show that the Debtor was reimbursed by Mounce for the cost of handling and selling the reconditioned used cars and for reconditioning the old trade-ins. Absent any reimbursement to the Debtor, Mounce has not shown any exercise of ownership.

Property of the estate, as defined in Section 541 of the Code, 11 U.S.C. § 541, includes "all legal and equitable interest of the debtor in property as of the commencement of the case." The policy behind Section 362 of the Bankruptcy Code authorizing an automatic stay in handling property of a bankrupt debtor is to protect the creditors and allow the Court to determine the

rights of the creditors and determine the owners of the individual assets. If a party can convince the Court that the stay should be lifted or modified because ownership exists in favor of one other than the debtor, assets can be removed from the Debtor's estate. In this case the Bankruptcy Court lifted the stay for cause under Section 362(b)(1) of the Bankruptcy Code. This Court finds, however, that cause has not been shown by the evidence to allow a lifting of the stay and that the ownership of the used vehicles in question has not been established by the record in anyone other than the Debtor.

Citizens argues that Mounce in essence purchased the used cars from the dealership through the financial arrangement held with the bank. This Court recognizes that purchase is broadly defined in the Texas Business & Commerce Code, Section 1.201(32) providing that, "purchase includes taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift or any other voluntary transaction creating an interest in property." In this case, however, none of the evidence supports any of the above transactions having transpired. Titles were never taken by Mounce in his individual capacity. Such titles were simply transferred to the Citizens Bank for holding until subsequent sale of the individual used car.

Section 9–203 of the Uniform Commercial Code (1978) provides that a security interest is not enforceable against a debtor and does not attach unless (1) the collateral is in the possession of the secured party pursuant to an agreement; (2) value has been given; (3) and the debtor has rights in the collateral. Appellees argue that all three of these requirements have occurred thus allowing Citizens to acquire a security agreement in the used cars. They also argue that the security agreement evidences the sale of the used cars to Mounce and a transfer of ownership in the same. The Court disagrees.

Although the Citizens may have attempted to create a security agreement in the used cars, no evidence shows that a specific agreement between Citizens and Mounce and Debtor existed to transfer actual ownership of the cars to Mounce in order for him to acquire a security agreement. Mounce did not own the collateral. A lack of segregation of funds and records upon the subsequent resale of the used cars also shows that value was not given to acquire a security agreement. This Court feels that the key to unraveling the confused situation is to trace the actual ownership of the car titles throughout the financial arrangement. At no time does the record reflect that Mounce actually received the car titles from the Debtor in order for him to attach the security agreement. Consequently, the security agreement, the financing statement filed, and all other subsequent papers filed by Mounce are unenforceable and irrelevant. This does not show ownership or support the appellee's position.

Appellees also argue that the Debtor corporation has received full value for the used cars sold to Mounce and floor planned by him through the bank. It appears to this Court, however, that the funds transferred to the Debtor by Mounce were simply an additional equity investment made by Mounce to allow the Debtor to remain in business. Such advances cannot now be transformed into ownership purchases unless Mounce can bring forth additional evidence of ownership to buttress his contentions. Buying an automobile is different than buying time for a faltering business.

This Court reverses and remands this case for further proceedings consistent with this opinion.