**In re James Joseph DENNISON, Debtor.**

**Bankruptcy No. 85–01014K.**

United States Bankruptcy Court, E.D. Pennsylvania.

July 12, 1985.

Irwin Trauss, Philadelphia, Pa., for debtor.

Richard C. Osterhout, Trevose, Pa., for movant/Sharon Boub.

James J. O'Connell, Philadelphia, Pa., Chapter 13 Standing Trustee.

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of

OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

Presently before the Court is the motion of Sharon Boub ("movant") for relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code. Movant acquired a deed to premises located at 6731 Roosevelt Boulevard, Philadelphia, Pennsylvania, from the Prothonotary of Philadelphia County on February 28, 1985. She seeks relief from the stay in order to obtain possession of the property, which is currently being occupied by James Joseph Dennison ("debtor"). The debtor owned the property for thirty (30) years prior to the conveyance to movant. He contends that relief from the stay should not be granted because *inter alia* the deed upon which movant bases her claim to title is defective. The debtor challenges the validity and propriety of the conveyance of title to movant. Upon consideration of the arguments and testimony presented by both parties, we will grant the relief requested.

The facts surrounding the transfer of title to movant are complex and will be set forth in some detail:[1]

On or about July 30, 1983, the debtor shot and injured a youth by the name of Edward Zinni. Although the debtor alleges that Zinni stole money from him, Zinni brought criminal charges against the debtor. The debtor was tried and convicted of a criminal offense in the Philadelphia Court of Common Pleas, Criminal Trial Division, (*Commonwealth v. James J. Dennison*, August Session, 1983, Nos. 1306–1308; November Session, 1983, Nos. 2352–2355). The sentencing hearing took place on May 10, 1984. The lawyer appointed to represent the debtor in the criminal action, Mary McNeill Zell, Esquire, sought to have the debtor released on parole. The sentencing Judge, the Honorable Bernard J. Avellino, agreed to allow the debtor to sell his home as an alternative to serving a prison term.

the Bankruptcy Rules.

On May 22, 1984, the debtor entered into an agreement of sale for the sale of his residence. Later, when the debtor refused to comply with the sentence bargain and proceed with settlement and conveyance of the property to the movant on July 27, 1984, he was incarcerated at Holmesburg Prison.

On August 21, 1984, movant filed a complaint for specific performance of the agreement of sale in the Court of Common Pleas of Philadelphia County, Civil Division, (*Sharon A. Boub, a/k/a Sharon A. Keiter v. James J. Dennison,* August Term, 1984, No. 3466, Civil Action—Equity). A notice to defend accompanied the complaint, which allowed the debtor twenty (20) days to answer. The complaint was served upon the debtor at Holmesburg Prison on August 28, 1984.

On September 29, 1984, thirty-two (32) days after service of the complaint, a notice of intention to enter judgment by default in accordance with Pa. Rule of Civil Procedure 237.1 was sent by ordinary mail to the debtor's Roosevelt Boulevard address and to Holmesburg Prison.

On October 12, 1984, judgment by default was entered for movant and against the debtor. Notice of the entry of default was sent by ordinary mail to the debtor's Roosevelt Boulevard address and to Holmesburg Prison, in accordance with PA. Rule of Civil Procedure 236.

On October 25, 1984, the Prothonotary of the Philadelphia Court of Common Pleas accepted the debtor's *pro se* response to the complaint. On December 29, 1984, the Court entered a rule to show cause why a final decree should not be entered against the debtor compelling him to perform the agreement of sale. The rule was made returnable on January 17, 1985 at 9:45 A.M. When the debtor did not appear for hearing on January 17th, the Court made the rule absolute and entered a final decree directing the debtor to specifically perform the agreement within thirty (30) days by conveying the premises to movant. A hearing was set for February 28, 1985. The Prothonotary mailed notice of the entry of the final decree to the debtor's Roosevelt Boulevard address.

Upon the failure of the debtor to comply with the final decree, the Court entered an order on February 28, 1985, which directed the Prothonotary to execute and deliver to movant a deed conveying marketable title free and clear of all encumbrances. The deed was acknowledged before a notary public on March 5, 1985, and was recorded on March 8, 1985.

The debtor was released from prison on or about November 1, 1984. He was injured in an automobile accident shortly thereafter and was in a convalescent home between December, 1984 and March, 1985. He returned to 6731 Roosevelt Boulevard in March, 1985, and has been residing in the property since then. Movant obtained a writ of possession on March 12, 1985. Action on the writ was barred, however, when the debtor filed a petition under Chapter 13 of the Bankruptcy Code ("Code") on March 19, 1985.

Movant filed the instant motion for relief from the automatic stay on April 29, 1985. Hearings were held on the matter on May 16, 1985, June 6, 1985 and June 13, 1985.

The debtor has filed a motion in state court to strike or open the default judgment entered against him on October 12, 1985 by the Court of Common Pleas of Philadelphia County. On June 16, 1985, he filed a motion in the United States District Court for the Eastern District of Pennsylvania seeking to remove the motion to open the default judgment to the federal court. The debtor has also filed an adversary complaint in this Court to avoid the transfer of the property to movant pursuant to sections 547 and 548 of the Code.

In the instant motion for relief from the automatic stay, movant claims she is the holder of valid legal title to the property located at 6731 Roosevelt Boulevard, having obtained a deed from the Prothonotary of Philadelphia County pursuant to court order in a specific performance action. Although movant paid $40,900.00 plus settlement costs for the property, and

has been making mortgage payments of $547.17 per month, the debtor is residing in the property and refuses to leave. Movant seeks relief from the stay for cause in order to evict the debtor from the premises.[2]

In response to the motion for relief, the debtor asserts that movant's title to the property is defective. He requests that the Court order the stay to remain in effect pending the outcome of his complaint to avoid the transfer of title to movant. Essentially, there are four (4) grounds upon which he challenges the validity of movant's title. First, he argues that the deed conveyed to movant by the Prothonotary is defective because it was not acknowledged in open court as required by Pa.Stat.Ann. tit. 21, § 53 (Purdon 1901).[3] Second, he argues that he had no notice of the Orders of the Common Pleas Court directing him to perform the agreement of sale and authorizing the Prothonotary to convey the deed to movant. He contends that because he was not residing in the property at the time the notices were sent to him by ordinary mail, an attempt should have been made to serve him personally because the

remedy contained in Pa.Stat.Ann. tit. 21, § 53 is analagous to a contempt order. Therefore, he argues, he could not "refuse or neglect to comply" with orders of which he had no knowledge.

Third, the debtor claims that the transfer of title to movant may be avoided because he signed the agreement of sale with movant under duress.

Fourth, the debtor claims that the consideration received for the property was below its fair market value.

■ A hearing on relief from the automatic stay is typically not the proper forum for the assertion of counterclaims against the party seeking relief. The Third Circuit Court of Appeals made this clear in *In re Roloff*, 598 F.2d 783 (3d Cir.1979), wherein it held that the bankruptcy court was without jurisdiction to hear affirmative defenses and counterclaims in response to a secured creditor's complaint to lift the automatic stay. The Court explained its reasoning as follows:

> We do not believe that, by designating as a "complaint" the motion for relief from the stay, the drafters of the Bankruptcy

---

2. Even though movant holds legal title to the property in question, the automatic stay of section 362(a) applies to movant's attempts to gain possession.

   Section 362(a)(1) bars the "commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the *debtor* that was or could have been commenced before the commencement of the case under this title ..." (emphasis added). Section 362(a)(3) bars "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate". *See Emerson Quiet Kool Corp. v. Marta Group, Inc.* (In re Marta Group, Inc., 33 B.R. 634, 642 (Bankr.E.D.Pa.1983).

   Section 362(d) provides that the court shall grant relief from the stay—

   (1) for cause, including the lack of adequate protection of the interest in property of such party in interest; or

   (2) with respect to a stay of an act against property under subdivision (a) of this section, if—

   (A) the debtor does not have equity in such property, and

   (B) such property is not necessary to an effective reorganization.

3. Pa.Stat.Ann. tit. 21, § 53 provides:

   § 53. Conveyance by officer when decreed by court; acknowledgment in open court

   In any proceedings at law or in equity, in any of the courts of this commonwealth having jurisdiction, if the said court shall order a conveyance to be executed by either of the parties to the said proceeding or his or her interest in any lands or tenements to any other party or person, and the party so orders shall *neglect or refuse to comply* with the said order and make the said conveyance, or shall die, flee the jurisdiction, or become insane without having complied therewith, it shall be lawful for the said court to order and direct that such conveyance be made by the sheriff, prothonotary or clerk or by a trustee specially appointed for that purpose; and the said conveyance having been duly executed by said sheriff, prothonotary, clerk or trustee, and acknowledged in open court, shall be good and effective to convey the interest of the recusant, neglecting, deceased, persons fleeing the jurisdiction, or insane party, to the extent ordered by the court, the same as if it had been duly executed and delivered by such party personally. (emphasis added).

Rules anticipated that bankruptcy judges would be authorized to conduct trials on the merits of particular liens whenever relief from a stay was sought. As one commentator has noted:

The debtor will frequently have, or be able to devise,.... counterclaims against the secured creditor. Fraud, negligence, breach of contract, usury, interference with perspective business advantage, securities fraud, antitrust violations—all are claims that a debtor might raise to challenge the debt. Allowing a debtor to raise these real or imagined claims, when a creditor files a complaint for relief from the automatic stay, could flood the bankruptcy courts with complex trials—including jury trials—on every conceivable tort and contract counterclaim. Such a result does not accord with either the essential nature of a complaint for relief from stay, that of a hearing on a preliminary injunction, or with the intention of the drafters of the Bankruptcy rules, who gave calendar priority to these hearings.

The complaint to vacate the stay was not designed to initiate full adjudication on the merits of prior liens filed by a secured creditor, and it was error for the bankruptcy judge to consider affirmative defenses and counterclaims going to the merits and amount of Audubon's judgment.

In conclusion, it is important to emphasize that the refusal to permit a bankruptcy court to adjudicate affirmative defenses and counterclaims going to the substance of a prior foreclosure proceeding in no way undermines the authority of that court to decide whether to continue the automatic stay. The bankruptcy judge must determine whether the Roloffs have any equity in the foreclosed property. He must also decide whether the continuation of the stay will cause undue harm to Audubon. Finally, it is necessary that he evaluate whether there is a reasonable possibility of successful rehabilitation of the bankrupt and how such prospect will be affected should the encumbered property be withdrawn from the estate. These are the considerations that traditionally support a determination to vacate or retain an automatic stay in these cases, and we do not understand Audubon to question their relevance here. As we recognized in [*In re*] *Decker*, [465 F.2d 294 (3rd Cir.1972) ], the lack of summary jurisdiction to decide the ownership of the foreclosed property does not affect the authority of the court to exercise equitable powers specifically granted to it in Chapter XII. As for the Roloffs' assertion that they should be allowed to attack the prior judgment on the merits, it is enough to say that whatever right they may have to litigate that question must be exercised elsewhere and not in response to a complaint to vacate an automatic stay.

598 F.2d at 788.

*Roloff*, of course, was decided under a different jurisdictional scheme than the one presently in existence.[4] Nevertheless, with the enactment of the Bankruptcy Reform Act of 1978, Congress made it clear that the expedited treatment for relief from stay matters does not encompass the handling of counterclaims at such a hearing. The legislative history to section 362 states:

The action commenced by the party seeking relief from the stay is referred to as a motion to make it clear that at the expedited hearing under sub section (e), and at hearings on relief from the stay, the only issue will be the lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective reorganization of the debtor, or the existence of other cause for relief from the stay. This hearing will not be the appropriate time at which to bring in other issues, such as counterclaims against the creditor,

---

**4.** *Roloff* was decided under the Bankruptcy Act of 1898, 11 U.S.C. §§ 801–926 (1970), when the jurisdictional power of a bankruptcy court was limited to "summary" matters. Under section 411 of the Act, 11 U.S.C. § 811, the bankruptcy court had "exclusive jurisdiction of the debtor and his property, wherever located." The Bankruptcy Reform Act of 1978 became effective on October 1, 1979, 11 U.S.C. §§ 101–151326 (Supp. 1979).

which, although relevant to the question of the amount of the debt, concern largely collateral or unrelated matters. This approach is consistent with that taken in cases such as *In re Essex Properties, Ltd.*, 430 F.Supp. 1112 (N.D.Cal.1977), that an action seeking relief from the stay is not the assertion of a claim which would give rise to the right or obligation to assert counterclaims. Those counterclaims are not to be handled in the summary fashion that the preliminary hearing under this provision will be. Rather, they will be the subject of more complete proceedings by the trustee to recover property of the estate or to object to the allowance of a claim.

However, this would not preclude the party seeking continuance of the stay from presenting evidence on the existence of claims which the court may consider in exercising its discretion. What is precluded is a determination of such collateral claims on the merits at the hearing.

S.Rep. No. 95–989, 95th Cong., 2d Sess. 55, *reprinted in* 1978 U.S. Code & Cong. & Admin.News 5787, at 5841. *See also Emerson Quiet Kool Cor. v. Marta Group, Inc.* (In re Marta Group, Inc.), 33 B.R. 634, 641 (Bankr.E.D.Pa.1983); *LaSalle National Bank v. Harrow Leasing* (In re Harrow Heasing), 32 B.R. 688, 689 (Bankr.E.D.Pa. 1983); *United Companies Financial Corp. v. Brantley* (In re Brantley), 6 B.R. 178 (Bankr.N.D.Fla.1980).[5]

■ Thus, in the case before the Court, the issue is whether the debtor has presented sufficient evidence to convince us that he will prevail in an action challenging the validity of movant's title, in which case, we would exercise our equitable powers and order the stay to remain in effect.

■ Having examined the evidence presented, we are not persuaded that the debtor would succeed in vitiating title. The alleged defect in title due to lack of acknowledgment of the conveyance in open court does not appear to be of such serious magnitude as to render movant's title null and void. Presumably, the defect, not being of a substantive nature, could easily be cured by having the Prothonotary reconvey the deed in open court.

Similarly, we are not convinced that the form of notice utilized in the Court of Common Pleas Court action was improper. It appears that movant took the appropriate measures to inform the debtor of the action pending against him. Moreover, Mary McNeill, Esquire, the attorney who represented the debtor in the criminal proceeding, was also appointed by the Court to represent the debtor in the civil action. All issues regarding lack of notice, etc. should have been raised in the Court of Common Pleas by counsel. The fact that the debtor failed to leave a forwarding address with the post office and failed to inform anyone of his whereabouts from December, 1984, to March, 1985, should not work in his favor.

Although the debtor claims that he signed the agreement of sale under duress, there is no evidence of fraud or duress on the facts presented. The debtor was tried and convicted of a criminal offense, and the sentencing Judge allowed him to sell his property instead of going to prison. The debtor cannot now claim that he was pressured into signing the agreement of sale, when he voluntarily chose to sign that agreement and then later decided that he would rather go to prison. Movant was not a party to the criminal proceeding, and we fail to see how the debtor's argument of duress is applicable to her.

The fourth and final argument of the debtor is that the sale price paid for the property was less than market value. Movant called an experienced real estate appraiser at the hearing on May 16, 1985, who valued the property at $42,500.00.

5. The Bankruptcy Judge in *Brantley* held that when affirmative defenses or counterclaims are asserted and raised which strike at the heart of the amount of the creditors' claim or the validity of his lien, such defenses or counterclaims directly affect the issue of equity and thus the issues of harm and adequate protection as well as the reasonable probability of any plan of reorganization. When such are asserted or raised, the court should give consideration to them in determining whether or not the stay should remain in effect. 6 B.R. at 188.

The debtor offered no appraisal of his own, nor did he discredit the testimony of movant's appraiser. Therefore, we are convinced that the price paid by movant in the amount of $40,900.00 was reasonably equivalent to its market value.

In summary, even if the default judgment was opened due to technical defects in the title transfer process, the debtor does not appear to have a meritorious defense to the specific performance action. If required to do so, movant could simply refile her specific performance action and obtain the same result, i.e., enforcement of the agreement of sale. The debtor has not shown how the agreement is unenforceable. Having considered the arguments raised by the debtor, and finding the equities in favor of movant, we will grant the motion for relief from the stay.