**In re COMPASS VAN & STORAGE CORP., Debtor.**

**Bankruptcy No. 884–40907–18.**

United States Bankruptcy Court, E.D. New York.

May 29, 1986.

Louis P. Rosenberg, Brooklyn, N.Y., for debtor-defendant.

Dollinger, Gonski, Grossman & Permut, Carle Place, N.Y., for landlord.

### DECISION & ORDER

C. ALBERT PARENTE, Bankruptcy Judge.

237 Main Street Corp. (hereinafter "landlord") has moved for an order for relief from the automatic stay under 11 U.S.C. § 362(d). The landlord seeks to commence eviction proceedings against the debtor in State court due to the debtor's failure to pay its post-petition rent for the months of December, 1985, and January, 1986. The debtor counters that its rent obligation has been suspended by operation of the landlord's actual partial eviction of the debtor from the demised premises.

The premises in question consist of a commercial building and an accompanying parking lot. The debtor contends that by virtue of the Lease and Amendment thereto executed by the parties it has rights as tenant encompassing the entire premises. The landlord in rebuttal alleges that the lease only conveys to the debtor a portion of the above-mentioned building. In addition, the landlord asserts that it separately leases portions of this building known respectively as 235 and 239 Main Street. The debtor's affirmative defense maintains that the landlord's rental of part of the premises is in clear violation of the terms of the lease and deprives the debtor of its leasehold rights. Accordingly, the landlord's request for relief extends beyond the bounds of Section 362(d) and, in fact, seeks a declaratory judgment of the rights of the parties.

FINDINGS OF FACT

1) The debtor filed its Chapter 11 petition on June 1, 1984.

2) Burton R. Sims has been the sole owner of the debtor since 1976.

3) In July, 1984, the debtor's management was assumed by Michael P. Donovan, an individual not related to Mr. Sims. At the time of the hearing, Mr. Sims was proceeding to transfer full ownership of the debtor entity to Mr. Donovan.

4) The landlord is a closely-held corporation, one-half of which is owned by Bertha Simensky and one-half of which is held in a trust maintained by Mrs. Simensky, her son Burton Sims, and her daughter, Elayne Warren, for the benefit of these two children and a second daughter, Phyllis Storch.

5) The debtor has maintained its principal place of business at the demised premises since 1948.

6) The lease between the debtor and landlord dated June 1, 1969 (hereinafter "Lease"), grants the debtor rights to use and occupy the demised premises, designated in the Lease as "the building known as No. 237 Main Street, Town of Hempstead, Nassau County, New York." The Lease also provides for an annual rent of $14,400.

7) An Amendment to Lease dated November 9, 1976 (hereinafter "1976 Amendment") extends the Lease term from May 31, 1979, to May 31, 1989. This amendment refers to the original Lease as follows:

WHEREAS, the Landlord and Tenant entered into a Lease on June 1, 1969 for a term of ten (10) years for the entire building and surrounding area known as 237 Main Street, Hempstead, New York (all of which is hereinafter referred to as the "Building") at an annual rent of FOURTEEN THOUSAND FOUR HUNDRED AND 00/00 DOLLARS ($14,400.00) (hereinafter referred to as the Lease) ...

8) By order of this court dated September 11, 1984, the landlord was granted leave of the automatic stay to commence eviction proceedings against the debtor in State Supreme Court. The landlord's request for relief in that instance posited on the contention that the 1976 Amendment was not a valid and binding agreement. In the subsequent state court proceeding, Justice George A. Murphy upheld the validity of the 1976 Amendment as the effective extension of the lease term.

9) Since on or about 1948, those portions of the premises in question individually designated by the landlord as 235 and 239 Main Street (hereinafter, respectively, "235 and 239 Main Street") have been rented to and occupied by business entities other than the debtor. However, the debtor has sporadically used this space in the operation of its moving and storage business to store certain materials.

10) During the period from 1948 to the date of the debtor's filing, the landlord's financial books and records were kept at the debtor's place of business and maintained by the debtor's employees under the supervision of Burton Sims.

11) Until the date of filing, the debtor's employees collected the rent from the occupants of 235 and 239 Main Street. Burton Sims testified that those payments were rightfully due to the debtor, which sublet 235 and 239 Main Street on a month-to-month basis. He also testified that under his direction these funds were deposited directly into the landlord's bank accounts to maintain the landlord's solvency. Although he could produce no verifying documentation, Mr. Sims contends that he had discussed this practice with his sisters.

12) Kenneth Shea is a former employee of the debtor who had worked for the debtor for 20 years, ultimately serving as its president. He testified on the landlord's behalf that he understood 235 and 239 Main Street to be separate and distinct premises from 237 Main Street. He also attested to his belief that the debtor never had nor claimed to have rights to 235 and 239 Main Street.

13) Harold Warren is Burton Sims' brother-in-law and co-owned the debtor entity with Mr. Sims until 1976. Justice Murphy found that the 1976 Amendment was negotiated on the landlord's behalf by Bertha Simensky in consideration of Mr. Sims' buyout of Mr. Warren.

14) Harold Warren's testimony echoed that of Mr. Shea. In addition, Mr. Warren related that he would negotiate the leases for 235 and 239 Main Street and present the leases to Bertha Simensky or her late husband, Ruben, for their signatures. Prior to his dissociation from the debtor, Mr. Warren was an officer of the debtor but never served as an officer of the landlord.

15) Neither party produced any leases that record the rentals of 235 or 239 Main Street.

## DISCUSSION

As noted above, the matter presently before this court is the landlord's motion to vacate the automatic stay for cause, to wit, the debtor's failure to pay its post-petition rent.[1] However, in its presentation before

---

1. As stated in its motion, the landlord seeks "... an Order pursuant to 11 U.S.C. § 362(d) lifting the automatic stay of bankruptcy and permitting movant to commence a State Court action to evict the debtor tenant from the commercial premises it now occupies." The landlord failed to specify the subsection of Section 362(d) under which it seeks relief from the stay, but it has

this court and in its post-trial memorandum of law, the landlord has sought to eschew the traditional constrictions of the automatic stay hearing. *See generally,* Weintraub and Resnick, *Bankruptcy Law Manual,* ¶ 1.09[7] at 1–30–32 (1978). Specifically, the landlord has requested this court to determine particular contract rights of the respective parties under applicable New York State law. As a result, the parties have failed to directly address the core issues of an automatic stay determination under 11 U.S.C. § 362(d).[2] Their inattention graphically highlights an anomaly in Congress' enactment of 11 U.S.C. § 365(d)(3),[3] in which Congress failed to include a concomitant enforcement provision. *See,* 2 Collier's on Bankruptcy ¶ 365.-03[1] at 365–31 (1985).[4]

This court adverts to the procedural confusion engendered by Congress' failure to articulate an appropriate remedy for a debtor's noncompliance with Section 365(d)(3). In a variety of instances where a debtor-tenant is in default of its legal obligations, the landlord is explicitly afforded relief within the Bankruptcy Code. Thus, when a debtor does not abide by the directive of Section 365(d)(3), the landlord can be reasonably expected to couch its request for relief in the terminology of these alternative forms of relief. In this case, the landlord's utilization of Section 362(d) as its chosen remedy has perforce compelled the debtor to aver its affirmative defense within the context of a summary proceeding on relief from the stay. For the reasons stated below, and in the interest of judicial economy, this court will concurrently con-

offered no proof with regard to the debtor's equity in the lease. *See generally,* 11 U.S.C. §§ 362(d)(2) and (g)(1). This court extrapolates from the landlord's papers and presentation in court, and assumes as such for the purposes of this case, that the landlord seeks to vacate the automatic stay for cause, pursuant to 11 U.S.C. § 362(d)(1).

**2.** The issues of adequate protection, debtor's equity in property, necessity of property to an effective reorganization, or the existence of other cause for relief from the stay are the only litigable issues in an automatic stay hearing. For a specific discussion of these issues as they relate to the present case, *see, infra* at 234–35.

**3.** Section 365(d)(3) provides:

The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

**4.** This court's recent decision in *In re Musikahn,* 57 B.R. 942, 14 C.B.C.2d 314 (Bkrtcy.E.D.N.Y.

1986) noted that Section 365(d)(3), as well as its supporting legislative history, P.L. 98–353, *reprinted in* 1984 U.S.Code Cong. & Ad.News 576, 599, is silent as to the consequences that arise from the debtor's failure to adhere to its post-petition lease obligations. Accordingly, this court advised the debtor Musikahn Corp. that its disregard of an order from this court directing it to pay its post-petition rent, in compliance with Section 365(d)(3), could constitute cause for this court to vacate the automatic stay and allow the landlord to pursue its state law remedy. 57 B.R. at 945.

One commentator has suggested that upon a debtor's failure to comply with Section 365(d)(3), the nondebtor party could seek to have any extension of the statutory 60-day period to assume or reject the lease terminated. *See,* 2 Collier's on Bankruptcy ¶ 365.03[1] at 365–31 (1985). However plausible this remedy might appear to be, its ameliorative affects will only accrue to the landlord where the debtor has first been granted an extension of the relevant 60-day period. Relief from the automatic stay is accordingly a more general remedy that is accessible to the nondebtor party in a greater number of circumstances. Clearly, requests for either remedy will achieve the policy goals supporting Section 365(d)(3) and force the debtor to recognize its post-petition lease obligations. *C.f., In re Southwest Aircraft Services, Inc.,* 53 B.R. 805, 13 B.C.D. 814, 815 (Bkrtcy.C.D.Cal. 1985), where the bankruptcy court, finding Section 365(d)(3) to be silent regarding the consequences of noncompliance, noted that the failure to comply with this provisions might result in a default which could not be cured by the trustee, *arguendo,* rendering the lease nonassumable and so deemed rejected.

sider the issues of cause under Section 362(d) with those relating to the debtor's failure to pay its post-petition rent within the purview of Section 365(d)(3).

■ Section 362(g) charges the debtor, as the party opposing the request for relief, with the burden of proving all issues in the hearing on relief from the stay except that of the debtor's equity in property. Notwithstanding this mandate, the party seeking relief for cause bears an initial burden of production that antecedes the debtor's burden to refute cause. *In re Rye*, 54 B.R. 180, 181–82 (Bkrtcy.D.S.C. 1985). Proof of exigencies that compel permitting an action in another forum to proceed to judgment might fulfill the movant's duty and constitute sufficient cause. 1978 U.S.Code Cong. & Ad.News at 5759, 6300; *see, In re UNR Industries, Inc.*, 54 B.R. 263, 265 (Bkrtcy.N.D.Ill.1985). However, a movant seeking vacatur of the stay to pursue a state court remedy must necessarily establish the State law claim upon which the remedy is premised and that the claim has merit.[5] *In re Towner Petroleum Co.*, 48 B.R. 182, 191, 13 B.C.D. 36 (Bkrtcy.W.D. Okla.1985), *In re Setzer*, 47 B.R. 340, 345 (Bkrtcy.E.D.N.Y.1985).

■ The movant's naked assertion that it will be irreparably harmed by the maintenance of the stay will not satisfy the burden of production. *In re Towner Petroleum Co.*, 48 B.R. at 191, *In re Setzer*, 47 B.R. at 345. Courts generally have denied requests for relief for cause if the movant fails to establish the legal basis for its assertion of cause. *Citizens Nat. Bank, Greenville, Texas v. Harold Munce Toyota*, 37 B.R. 928, 930, 9 C.B.C.2d 1095 (N.D. Texas 1983). Similarly, courts have maintained the stay when the movant's ultimate objectives can be readily attained within the province of the Code. *In re Towner Petroleum Co.*, 48 B.R. at 191.

■ The debtor may defeat a movant's showing of cause by demonstrating

through probative evidence to the court's satisfaction that the debtor will likely prevail in the state court action. *In re Dennison*, 50 B.R. 950, 955 (Bkrtcy.E.D.Penn. 1985). Affirmative defenses and other arguments in opposition proffered by a debtor which contest the validity of the rights asserted by a movant are often determinative of whether relief from the stay is appropriate. *See, In re Lopez-Soto*, 764 F.2d 23, 26–28 (1st Cir.1985), *In re Davenport*, 34 B.R. 463, 466 (Bkrtcy.M.D.Fla. 1983). In such circumstances, the bankruptcy court's consideration of germane affirmative defenses is imperative. Whether the court may appropriately reach a determination as to the merits of an affirmative defense to an assertion of cause is less evident.

Congress intended a hearing under Section 362(d) to be conducted in an expedited manner. The only matters to be determined by the bankruptcy court in these proceedings are issues of adequate protection, debtor's equity in property, the necessity of property for an effective reorganization, or the existence of any other cause for relief. 1978 U.S.Code Cong. & Ad.News at 5841. Thus, the automatic stay hearing is normally not the appropriate context for the court to consider counterclaims and affirmative defenses in and of themselves.

■ Ample authority supports the precept that evidence of such collateral claims may be considered within the bankruptcy court's discretion. Sections 362(d) and (e) have been further interpreted to preclude a determination of collateral claims on their merits. *See, In re Lopez-Soto*, 764 F.2d at 26, *In re Dennison*, 50 B.R. at 955, *In re Davenport*, 34 B.R. at 466. However, the concept of cause in automatic stay litigation is an amorphous notion to be considered in totality with all of the circumstances that characterize the particular case. *Matter of Baptist Medical Center of*

---

5. Where a party seeks relief for cause to allow the continuation of a state court action, that party must show that it will likely prevail on the merits of the case. *In re Reisor Co., Inc.*, 46 B.R.

290, 291 (Bkrtcy.W.D.La.1985), *In re Bock Laundry Mach. Co.*, 37 B.R. 564, 566 (Bkrtcy.N.D. Ohio 1984).

*N.Y., Inc.*, 52 B.R. 417, 424–25 (E.D.N.Y. 1985). The contingencies of the case must therefore factor into a court's determination of whether an affirmative defense is collateral to an allegation of cause. *Accord*, 1978 U.S.Code Cong. & Ad.News at 5841, 6300–01.

■ The Ninth Circuit, in *In re Johnson*, 756 F.2d 738, 13 B.C.D. 431, 12 C.B.C.2d 573 (9th Cir.1985), *cert. den.*, —— U.S. ——, 106 S.Ct. 88, 88 L.Ed.2d 72, reasoned that the validity of a claim or contract underlying the claim is not usually litigated during the automatic stay hearing; the court held that a state law awarding attorneys' fees in contract actions was not to be considered in stay litigation. However, the *Johnson* decision suggests that state law issues will not always be collateral to the question of relief from the stay. *Id.*, at 740–41. Rather, a court's reference to state law in an automatic stay determination is predicated on the substance of a movant's allegations of cause. *Id.*, at 741. In this case, the application of New York State landlord-tenant law hinges on whether this court must resort to state law to properly adjudicate the substantive issues of this case.

■ The landlord has heretofore alleged that the debtor's failure to pay two months' post-petition rent is sufficient cause for this court to vacate the stay. In order to meet its burden of production, the landlord must demonstrate that it has legitimate lease rights to these payments. In its refutation of cause, the debtor argues that its obligation to pay rent has been suspended by operation of law. Resolution of the actual partial eviction issue is essential rather than collateral to a determination on

the existence of cause. Accordingly, this court finds that a ruling on the respective lease rights of the parties is appropos and in fact a prerequisite to the automatic stay determination.[6] *Accord, United Cos. Fin. Corp. v. Brantley*, 6 B.R. 178, 188, 6 B.C.D. 932 (Bkrtcy.N.D.Fla.1980).

## CONCLUSIONS OF LAW

1) Under applicable New York State law, the meaning given to a particular contract provision is to be interpreted according to the expressed intent of the parties. *Century Operating Corp. v. Popolizio*, 470 N.Y. S.2d 346, 349, 458 N.E.2d 805, 808, 60 N.Y.2d 483 (1983). This intent can usually be inferred from the specific lease language. *In re Evelyn Byrnes Inc.*, 32 B.R. 825, 831, 9 C.B.C.2d 430 (Bkrtcy.S.D.N.Y. 1983.).

2) Ambiguous lease provisions are to be construed *contra proferentem* against the lease draftsman and in favor of the party who played no role in selecting the lease language. *Id.* at 832, *In re National Sugar Refining Co.*, 21 B.R. 196, 198 (Bkrtcy. S.D.N.Y.1982), *151 West Associates v. Printsiples Fabric Corp.*, 472 N.Y.S.2d 909, 910, 460 N.E.2d 1344, 1345, 61 N.Y.2d 732 (1984).

■ 3) The debtor's rights are unequivocal as tenant under the Lease to the whole of 237 Main Street, which physically includes those stores designated by the landlord as 235 and 239 Main Street, and to the attendant parking area for 237 Main Street.

A clear reading of the Lease and 1976 Amendment compels this court's conclusion. The Lease demises to the debtor "the

---

**6.** This court notes that pursuant to Bankruptcy Rules 6006(b) and 9014, actions under both Sections 362(d)(1) and 365(d)(3) are contested matters to be commenced on motion by a party in interest. In light of a prevailing interest to promptly resolve those matters in dispute between the parties, this court can find no benefit in requiring the landlord to separately move this court to consider the issues under Section 365(d)(3) which are so clearly present in this case.

In addition, both parties have disregarded all issues that normally arise in automatic stay litigation, and have directed themselves solely to issues of Lease interpretation under New York State Landlord-Tenant Law. The legislative history of Section 362 suggests that the bankruptcy court may determine an affirmative defense to an allegation of cause on its merits if such a determination is on consent of both parties. 1978 U.S.Code Cong. & Ad.News at 5841; *see, In re Essex Properties, Ltd.*, 430 F.Supp. 1112, 1115–16 (N.D.Cal.1977). The parties' sole consideration of the state law issues in the present case constitutes such consent.

building known as No. 237 Main St., Town of Hempstead, Nassau County, New York." The introductory "Whereas" clause of the 1976 Amendment expounds upon the parties' intent as to the demised premises, stating, in pertinent part: "... the *entire building and surrounding area* known as 237 Main St., Hempstead, N.Y. (*all of which* is hereinafter referred to as the 'Building' )." (Emphasis added.) This additional language serves to clarify the previously expressed intention of the parties, and thus does not acknowledge to the debtor any greater rights than the debtor originally received in the Lease.

Notwithstanding the clear and unambiguous language of the Lease, the landlord seeks to persuade this court by oral testimony to disregard the language of the Lease as ambiguous and nonbinding. *See, United States v. Wallace & Wallace Fuel Oil Co.,* 540 F.Supp. 419, 425 (S.D.N.Y. 1982), *Barclay's Bank of New York v. Goldman,* 517 F.Supp. 403, 411–12 (S.D.N.Y.1981). The landlord offers the testimony of Messrs. Shea and Warren to verify its Lease interpretation. This testimony, in the best light, is evidence only of the impressions and beliefs of these individuals and is inconclusive as to the actual lease rights of the parties. This court also notes the antipathetic relationship between these witnesses and Mr. Sims, former principal of the debtor.

The landlord also offers two letters: one, dated January 26, 1983, from the landlord's accountants to Mr. Sims, and another, dated September 19, 1984, from a purported tenant of 235 Main St. to the landlord's attorney. The letter of January 26, 1983, is not indicative of substantive Lease rights but does tend to corroborate Mr. Sims' testimony to the extent that he directed the sub-tenant's rent to be forthwith deposited into the landlord's account. As will be further discussed below, the letter of September 19, 1984, merely illustrates the landlord's exercise of its alleged rights, but does not verify the actual existence of such rights. Similarly, the landlord's introduction of a subtenant's business card stating as a business address "239 Main Street"

fails to prove the contention that 239 Main Street is a separate and distinct leasehold interest from 237 Main Street.

The landlord's burden of proving the correctness of its alternative Lease interpretation is well established. *151 West Associates v. Printsiples Fabric Corp.,* 472 N.Y. S.2d at 910, 460 N.E.2d at 1345, *In re Evelyn Byrnes, Inc.,* 32 B.R. at 832. However, the landlord has failed to adduce any substantive evidence to support its interpretation. The landlord's failure to proffer any leases from tenants of 235 and 239 Main Street is a particularly significant factor impacting on this court's determination that there is no cause to vacate the automatic stay.

The landlord asserts that any such leases have been in the control of the debtor and Mr. Sims. However, in light of the strained relationship between the landlord's principals and Mr. Sims, the landlord's entrustment of such significant legal documents to Mr. Sims' control is incredible. The landlord would at least be reasonably expected to secure copies of such documents to insure against a conflagration of the antipathies among the principals of the parties. Moreover, if such leases ever did exist, the landlord should have obtained copies of such leases from the subtenants and produced same at trial. The landlord's allegations, unsupported by documentation, lack any credible factual or legal basis. Accordingly, this court must construe the Lease pursuant to its plain language in favor of the debtor.

■ 4) The landlord's asserted control over portions of the demised premises constitutes an actual partial eviction of the debtor.

The affirmative defense of actual partial eviction is predicated upon the arbitrary and willful interference with a tenant's right of possession. *Fifth Avenue Estates, Inc. v. Scull,* 249 N.Y.S.2d 774, 775, 42 Misc.2d 1052 (1st Dept.1964). The interference must be a *physical* expulsion or exclusion, as distinguished from a constructive eviction. *Barash v. Pennsylvania Termi-*

*nal Real Estate Corp.*, 308 N.Y.S.2d 649, 653, 26 N.Y.2d 77, 256 N.E.2d 707, 711 (1970). One commentator has further explained that,

> where a paramount landlord wrongfully induces his tenant's subtenant to attorn to him, and to pay directly to him, he ousts the tenant-sublessor from possession as effectually as if he had physically expelled him.

33 N.Y.Jur.Landlord & Tenant, § 171 at 517.

The above noted letter of September 19, 1984 vividly documents the landlord's wrongful exclusion of the debtor by exercising dominion and control over part of the demised premises.

5) The landlord's interference with the debtor's possession of the demised premises did not manifest until after Mr. Sims commenced sale of the debtor entity to Mr. Donovan.

The defense of actual partial eviction is only available to a tenant who takes possession of less than the whole demise with no prior knowledge that it could not possess the entire demise. *Id.* 249 N.Y.S.2d at 776, *Webb & Knapp, Inc. v. Churchill's Terminal East*, 155 N.Y.S.2d 588, 590, 2 A.D.2d 332 (1st Dept.1956). The debtor had already possessed the whole of the premises for a considerable period when it acquired knowledge that it could not use and occupy part of the building.

6) The landlord's actual partial eviction of the debtor abates the debtor's post-petition rent obligation until such time as this interference ceases. Where the actual partial eviction has occurred by the act of a landlord, a tenant's entire rent is suspended. *Fifth Avenue Building Co. v. Kernochan*, 221 N.Y. 370, 373, 117 N.E. 579 (1917). This rule is neither harsh nor unfair since it disallows a landlord's apportionment of its own wrong. The landlord's right to receive rent will be restored when the landlord ceases to interfere with the debtor's use and enjoyment of the demised premises. *Id., Fifth Avenue Estates, Inc. v. Scull*, 249 N.Y.S.2d at 777.

 7) The landlord has not demonstrated that cause exists for this court to grant it relief from the automatic stay.

Accordingly, the landlord's motion is DENIED.

It is SO ORDERED.